**FILED**

**UNITED STATES DISTRICT COURT
FOR THE DISTRIC OF COLUMBIA**

DEC 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Lower Brule Sioux Tribe, )
P.O. Box 187, )
Lower Brule, South Dakota 57548 )
in its individual capacity, ) CASE NO.
and in its capacity as representative of the classes )
Described fully herein, )
                              Plaintiff, )
)
         v. ) Civil Action No. _____
)
GALE NORTON )
Secretary of the interior, )
U.S. Department of the interior )
1849 C Street, N.W. )
Washington, D.C. 20240 )
)
ROSS O. SWIMMER COMPEL )
Special Trustee )
TRUST ) **COMPLAINT**
Office of Special Trustee for American Indians )
Department of the Interior )
1849 C Street, N.W. )
Washington, D.C. 20240 )
) CASE NUMBER 1:05CV02495
JOHN W. SNOW )
Secretary of the Treasury ) JUDGE: Royce C. Lamberth
1500 Pennsylvania Avenue N.W. )
Washington, D.C. 20220 ) DECK TYPE: General Civil
)
) DATE STAMP: 12/30/2005
                             Defendants. )

1

## A. GENERAL NATURE OF THE ACTION AND DESCRIPTION OF THE PARTIES

1. This is an action by the Plaintiffs for an accounting and reconciliation of their trust funds, for deprivation of their property rights without due process of law, and for equitable relief, and for such other relief as the Court deems appropriate.

2. The Plaintiff Lower Brule and the other Plaintiff's in the Class are all federally recognized Indian tribes, recognized by the United States as sovereign tribes with legal rights and responsibilities. Those Plaintiffs have governing bodies duly recognized by the Secretary of the Interior. The Plaintiffs in the Class are also recognized by the United States as Tribes which are eligible for the special programs and services provided by the United States to Indians because of their status as Indians, and because of the Plaintiffs' treaties and other agreements with the United States. The Plaintiffs in the subclass are tribes which were previously federally recognized or which are the unrecognized successors in interest to the rights and property previously held by federally recognized tribes. The members of this subclass have legal claims: (1) that their government-to-government relationship with the United States has never been terminated, or (2) that their government-to-government relationship was illegally terminated, or (3) that they currently qualify for federal acknowledgment under 25 C.F.R Part 81 or other applicable law. In addition, the Plaintiff's in this subclass are limited to those unrecognized tribes which have or had trust fund accounts held in their name or held for their benefit by the United States.

3. Defendant Gale A. Norton is the Secretary of the Interior who is charged by law with carrying out the duties and responsibilities of the United States as trustee for the Plaintiffs.

4. Defendant John W. Snow is the Secretary of the Treasury who is the

…

custodian of the Tribes' trust funds, and who is responsible for the administration of those funds and for the preparation and maintenance of records in connection with those funds.

5. Defendant Ross O. Swimmer is the Special Trustee for American Indians, appointed by the President of the United States with the advice and consent of the Senate. A number of the Defendant Swimmer's duties and responsibilities to the Plaintiffs are detailed in the Act of October 25, 1994, Pub. L. No. 103-412, 108 Stat. 4239.

## B. JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§§1331, 1361 and 1362. This is a civil action brought by Indian tribes. The case arises under the Constitution of the United States, including, but not limited to U.S. Const. Art. 6 (Supremacy Clause) and Amend. 5 (Due Process and Takings Clauses); and under the Plaintiffs' treaties and other agreements with the United States. As pled herein, it also arises under federal common law and under certain federal statutes governing the Plaintiffs' legal relationship with the United States, as well as certain federal statutes governing the administration and management of property held by the United States in trust for tribes. The Court also has jurisdiction over certain of these claims under 28 U.S.C. §1361 and 5 U.S.C. §§ 702, 704, and 706, as this is an action for injunctive relief to compel federal officials to perform a duty or duties owed to the Plaintiffs.

7. Venue is properly in this district under 28 U.S.C. §1391(b)(2) and (e)(1) and (e)(2) because this is an action in which the Defendants are officers and employees of the United States acting in an official capacity, and because a substantial percentage of the events or omissions giving rise to the claims herein have occurred within this judicial district and one or more Defendants reside in this judicial district.

3

## C. STATEMENT OF FACTS

8. Most of the Plaintiffs in this case reside within Indian Reservations established by the United States or on lands held in the name of the United States in trust for the Tribe. The Plaintiffs are the successors in interest to the signatories of certain Indian treaties with the United States, and they are the beneficial owners of certain monies currently or previously held in trust for the Plaintiff(s) by the United States, as well as of certain land and other trust assets, title to which is or was held in trust by the United States for the benefit of the Tribe. The Plaintiffs are or were also the owners of the natural resources located on that land, including, among others: water, timber, and a variety of mineral reserves. The Plaintiffs' trust holdings also include or included land which is or was valuable for grazing, agricultural, and recreational use, and for other purposes.

9. Under the terms of the Plaintiffs' treaties and other agreements with the United States, and under other applicable law, tribal land held in trust and the tribal resources located theron are or were inalienable except as authorized by Congress, or by the terms and conditions of the Plaintiffs' treaties or agreements with the United States. 25 U.S.C. §177. Congress granted the Secretary of the Interior the authority to approve conveyances of certain interests in the Plaintiffs' trust lands and trust resources, including but not limited to: leases, easements, rights of way, resource harvesting and resource use agreements. Federal law establishes the terms and conditions under which such conveyances were or may be made. Federal law also generally requires that compensation be paid to each of the Plaintiffs for such conveyances and the uses of tribal lands and tribal trust resources.

10. Since the Plaintiffs' agreements with the United States were executed, and/or since its treaties were ratified by the Congress, the Congress by its enactment of 25 U.S.C. § 2 and other federal laws has granted the Secretary of the Interior certain limited

authority to withdraw certain of the Plaintiffs' lands for federal and private purposes, including, but not limited to educational, religious and governmental uses. Federal law establishes and has almost always established the terms and conditions under which such withdrawals may be made, and when the land is to be returned to tribal use. Federal law generally requires, and has required, that compensation be paid to the Plaintiffs for the conveyance or use of said tribal lands.

11. The Plaintiffs entered into various treaties, settlements and other contractual agreements with the United States pursuant to which the United States took possession of certain of the individual Plaintiffs' lands and other valuable resources and claimed the ownership thereof. When the United States took possession and claimed the ownership of those items, it obligated itself to provide specific consideration to the Plaintiff(s) whose property was involved. As stated in those agreements, that consideration often took the form of money and/or goods and services which were to be provided by the United States to that specific Tribe and its members. In numerous instances, the Congress of the United States appropriated funds to pay for that consideration, and those appropriated dollars became the trust property of that specific Tribe until that consideration was delivered. None of the Plaintiffs have ever received an full and complete accounting of how or even if those appropriated funds were invested, how they were expended, and what happened to those funds between the time that the funds were appropriated and the time that the Tribe(s) actually received the full consideration provided for in those agreements.

12. When they took office, Defendant Secretary of the Interior and her predecessors assumed control and management over the Plaintiffs' trust property described in paragraphs 8 and 11 above. In this capacity, Defendant Secretary of the Interior and her predecessors have approved, among others: (A) agreements for the use and extraction of natural resources which are or were located on the various Plaintiffs'

5

trust property, (B) leases of the various Plaintiffs' trust lands, (C) easements across trust lands owned by the various Plaintiffs, (D) grazing permits on the various Plaintiffs' trust land, and (E) other grants, to third parties, of the authority to use certain of the various Plaintiffs' trust lands and natural resources for specific purposes. This Defendant and her predecessors have also, in certain limited instances, conveyed to third parties, the title to one or more parcels of land, belonging to individual tribal Plaintiffs, and they have approved the possession and use of certain of the various Plaintiffs trust lands for Federal purposes. By granting these rights, the Defendant Secretary of the Interior and her predecessors assumed the legal responsibility for the collection of fair and equitable compensation for those conveyances or uses including, but not limited to: royalty payments, grazing fees, rents, purchase prices, and such other fees and payments as are or were appropriate.

13. All of the Defendants in this case and their predecessors have, when they took office, assumed the responsibility for the collection of the payments from the trust lands, and trust resources described in paragraphs 8 through 12 above and for the investment of both the income that was and is being generated by the Plaintiffs' trust lands and trust resources, and the income which was or is being generated by the other trust monies which have been paid to the individual Plaintiffs.

14. Because the United States holds or held each of the Plaintiffs' trust lands, and resources and the proceeds generated by or from the use, sale, or taking of said resources in trust, it has assumed the obligations of a trustee. <u>U.S. v. Mitchell</u>, 463 U.S. 206, 225 (1983); <u>Cobell v. Norton</u>, 240 F.3d 1081 (D.C. Cir 2001). As trustee, the United States has a fiduciary relationship with each of the Plaintiffs and an obligation to administer the trust with the greatest skill and care possessed by the trustee. The United States has charged itself with moral obligation of the highest responsibility and trust in its conduct with Indian tribes and its conduct should therefore be judged by the most

exacting fiduciary standards. <u>Cobell</u> 240 F. 3d at 1099 (quoting <u>Seminole Nation v. United States</u>, 316 U.S. 286, 297 (1942)).

15. The trust obligation of the United States includes and has always included, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved, managed and invested so as to produce the highest and best use and return to the tribal owner consistent with the trust character of the property. Said duty requires and has always required the United States to further insure that each of the Plaintiffs is or was afforded its full rights to compensation as required by the Constitution of the United States and other applicable law.

16. The trust obligations of the United States include, and have always included, among others, the duty to: (A) collect the trust funds rightfully owed to each of the Plaintiffs; (B) create trust accounts to hold those funds (C) insure that the monies owed or paid for the loss or use of tribal lands and tribal trust resources are or were placed in those accounts, (D) maintain adequate records with respect to each of the Plaintiffs' trust property, (E) maintain adequate systems and controls to guard against errors or dishonesty; (F) provide regular and accurate accountings to each of the Plaintiffs as the trust beneficiary; (G) refrain from self-dealing or benefiting from the management of the trust property; (H) insure the Federal Government's compliance with the protections afforded to each of the Plaintiffs under the Constitution of the United States and other applicable law and (I) consult with each of the individual Plaintiffs regarding the management of its trust property.

17. Congress has charged the Defendants with fulfilling the obligations of the United States as trustee and with the responsibility for the administration and management of all trust property of each of the Plaintiffs in compliance with the Constitution of the United State, tribal treaties and Agreements and other applicable law.

18. Defendants control and manage or controlled and managed all of the individual Plaintiffs' trust lands and trust assets. They also have control over all of the books and records of accounts affecting the individual Plaintiffs' trust funds and trust property. Defendants have never rendered a full, accurate and timely audit or accounting to the individual Plaintiffs of their trust monies, or provided the individual Plaintiffs with a clear statement as to the origin or use of all of the funds in each of those accounts. In some instances, where the funds were derived or should have been derived from federal payments to one or more of the individual Plaintiffs, the Defendants have failed to provide that Plaintiff with a clear statement of why these payments were being made, what if any interest was being paid, and how the federal government determined the amounts which were due and payable. Defendants have also failed to establish any effective system for regular or periodic accountings or reports of the various Plaintiffs' trust property and funds, nor have they provided the individual Plaintiffs with those full and complete accountings or reports. As a consequence, Defendants have kept and continue to keep the individual Plaintiffs, who are the trust beneficiaries, uninformed as to: (A) the trust property, trust funds and trust resources they own or owned, (B) the income that their currently owned and previously owned trust property, trust resources and trust funds have produced, and (C) what disposition has been made of that income.

19. As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, among others, there are massive and long-standing problems with the Defendant's administration of Indian trust funds. After a series of oversight hearings on Interior's management of Indian trust funds, Congress issued a report condemning those practices. See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust fund. H.R., Report. No. 102-499, 102 Cong. 2d Sess. (1992), in which the

Congress noted that numerous reports prepared by the Interior Department's Inspector General, the General Accounting Office and the Office of Management and Budget have documented significant and habitual problems with the management of tribal trust monies. Those reports have also documented (A) a persistent failure to adhere to the duties and obligations the law imposes on a trustee, (B) a consistent pattern of refusing or ignoring directives to correct these problems and (C) a history of inaction and incompetence in the management of these assets. Congress also noted that this has culminated in the Bureau of Indian Affairs' inability to accurately account for trust fund monies, and its inability to even provide the tribal beneficiaries with full and accurate statements of their trust account balances.

20. Congress therefore concluded that the Bureau of Indian Affairs has failed to manage and invest these funds in the manner required by law. See <u>Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust fund.</u> H.R., Report. No. 102-499, 102 Cong. 2d Sess. (1992).

21. Upon information and belief, this mismanagement and this lack of a basic ability to mange these funds has resulted in losses to the Plaintiffs, who are trust beneficiaries. However, the extent of the losses is unknown to these Plaintiffs at this time because the Defendants have:

(A) failed to provide each of the Plaintiffs with a full and complete accounting of the source of its trust funds,

(B) failed to provide each of the Plaintiffs with an accurate accounting of the amount contained in each of its accounts, and the few reports that it has provided, like the one prepared by Arthur Anderson and Company, are incomplete and inaccurate,

(C) failed to provide each of the Plaintiffs with a comprehensive statement of the use and investment of its trust funds and the interest earned on those dollars,

9

(D) failed to maintain accurate books and records of each of the Plaintiffs accounts,

(E) lost and destroyed relevant trust account records,

(F) failed or refused to disclose known losses, or unmade or incomplete payments to the various Plaintiffs and other trust beneficiaries,

(G) failed or refused to reimburse trust beneficiaries for losses to their trust funds, and

(H) failed to properly create certain trust accounts and deposit the appropriate monies in those accounts,

See Misplaced Trust. H.R. Rept. No. 102-499 at 37-41.

22. By the Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, Congress imposed two requirements on the Defendants: (1) that they audit and reconcile tribal trust funds, and (2) that they provide the tribes with an accounting of such funds. Congress reaffirmed these two mandates in subsequent statutes, including, but not necessarily limited to: the Act of October 30, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990. By these Acts, Congress further required that the Defendants certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds. The Arthur Anderson and Company report clearly does not meet these requirements.

23. To protect the rights of the Plaintiffs and other tribes until an accounting of the trust funds could be completed, Congress has provided, in each Interior Department Appropriations Act since 1990, a provision stating that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting

of such funds from which the beneficiary can determine whether there has been a loss." See Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No . 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat 1341; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63.

24. On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, codified at 25 U.S.C. §§ 4001-61. Under the provisions of this Act, the Congress recognized the pre-existing trust responsibilities of the United States, and charged the Defendants with additional responsibilities to ensure the proper discharge of their individual trust responsibilities, as well as the trust responsibilities of the United States.

25. As evidenced by reports issued by the Interior Department's Inspector General, the General Accounting Office, and the Office of Management and Budget, among others, notwithstanding the foregoing Acts of Congress, Defendants have continued to fail to implement the reforms required by law and have hampered the Special Trustee for American Indians in his efforts to perform his legal obligations. The Defendants' continued failure to implement the required reforms and to provide timely and meaningful accountings is now the subject of pending litigation in federal court, Cobell v. Norton, No. 96-1285 (D.D.C.). The proceedings in that case, which are focused on trust accounts belonging to Indian individuals, confirm the Government's breach of

11

those obligations. See Cobell v. Babbitt, 91 F. Supp. 2d, 1 (D.D.C. 1999), aff'd sub nom Cobell v. Norton, 240 F. 3d 1081 (D.C. Cir 2001).

26. To date, the Defendants have failed to provide any of the Plaintiffs with a full, accurate and timely accounting of their tribal trust funds and have failed to meet their other statutory and legal obligations to the Plaintiffs leaving them in clear breach of their trust responsibility.

### D. CLASS ACTION ALLEGATIONS

26. Plaintiffs are members of the class of tribes whose members have been harmed by the specific actions as set forth hereinabove, to wit, being deprived of their right to a reconciliation and an accounting of their trust funds held by the United States as their trustee.

27. The membership in this class is so numerous that joinder of all members is impracticable, and also, because only the defendants know the names of the members of the class, and are the only persons who have information sufficient to identify the members of the class, it is impracticable to join the members of this class in this action.

28. There are common questions of fact and law with respect to the class.

29. The claims made by the representative party are typical of the claims of the class' claims.

30. The representative party will fairly represent and adequately protect the interests of all class members, and will do so both vigorously and zealously.

31. Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to class members, which would establish incomplete standards for parties opposing the class, and defendants have acted and refused to act on grounds generally applicable to the class, and class questions predominate with respect to each class.

32. Therefore, this action is maintained under F.R. Civ. P. Rule 23(a), (b)(1)(A),

(B) (1), (2) and (3).

33. It is impracticable to measure the size of the class, but there are at least 300 tribes many of which have in excess of 1,000 members each.

34. The nature of the notice to be provided to class members would be determined by the court.

E. **DESCRIPTION OF THE CLASS**

35. Plaintiff Lower Brule Sioux Tribe brings this action on its own behalf and on behalf of the following Class pursuant to Rule 23 (b)(2) of the Fed. Rules of Civ. Proc. (declaratory and injunctive relief):

> All Tribes that are federally recognized that are beneficiaries of fiduciary duties owed by the United States to ensure that their tribal trust property and trust funds are protected, preserved and managed so as to produce a highest and best use and return to the tribal owner consistent with the trust character of the property and to insure that the Tribes are afforded their full rights to compensation as required by the Constitution of the United States and other applicable law.

36. Plaintiffs also requests certification of the following subclass pursuant to Rule 23(b)(3). The following subclass will enhance the manageability of this action, avoid any material differences among class members and preserve the option for some class members to pursue individual damages actions: all class members who are presently non-federally recognized Tribes for whom the United States maintained or previously maintained trust accounts when such Tribes were federally recognized who presently have a right to reconciliation and accounting of their trust accounts.

37. If necessary to preserve the manageability and cohesiveness of the class, plaintiffs will later move for certification of other subclasses, as may appear appropriate.

38. The prerequisites for class certification of Rule 23 (a) are met in that:

(a) The class is so numerous that joinder of all members is impracticable. Plaintiffs believe that there are over 365 federally recognized tribes many of which have in excess of 1,000 members, and that there are 50 or more additional tribes in the proposed subclass. The members of both classes reside or work in identifiable geographic districts within the United States and they are clearly identified in various U.S. government documents and are clearly capable of being identified by the parties and the Court;

(b) There are questions of law or fact common to the class;

(c) The claims of the representative Plaintiff are typical of the claims of the class as plaintiffs and all class members have been subjected to civil rights violations, and all seek recovery under the same theories of law;

(d) The representative plaintiffs will fairly and adequately represent the interests of the entire class. The representative plaintiffs have no conflicts of interests with the class members. Plaintiffs have retained counsel who are experienced in class action litigation, including human rights class action litigation and other complex class action cases and who will vigorously prosecute this case on behalf of the class.

39. This action may be maintained as a class action under Rule 23 (b)(2) in that defendants have acted on grounds generally applicable to the class thereby making appropriate final declaratory and injunctive relief. Rule 23 (b)(2) was adopted primarily to permit the prosecution of actions such as this.

40. This action is also maintainable as a class action under Rule 23 (b)(3) in that common questions of law or fact predominate over any questions affecting only

individual members. Such common questions include, but are not limited to, whether defendants engaged in deprivation of trust funds and trust property without due process of law.

41. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The alternative of multi-plaintiff individual actions would be an unnecessary and impractical burden on the judicial system and the parties. Moreover, in the absence of a class action, many meritorious claims would go unprosecuted.

42. Notice would be given (A) via newspapers in the Washington D.C. area, (B) in Indian County Today, a newspaper regularly circulated in Indian communities throughout the United States, as well as in at least one other Indian publication with a comparable circulation, (C) by mailing notice to those class members whose addresses are known, (D) by issuing a newswire press release in Washington, D.C. and in other major U.S. cities, and by publishing notice in the Federal Register (E) and as otherwise directed by the Court.

F.   **CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**DECLARATORY & INJUNCTIVE RELIEF TO COMPEL DEFENDANTS TO PROVIDE A PROPER ACCOUNTING OF PLAINTIFFS' TRUST FUNDS AND FOR A DECLARATION THAT THIS FAILURE HAS INTERFERED WITH THE VARIOUS PLAINTIFFS' ABILITY TO BRING CLAIMS AGAINST THE UNITED STATES**

43. The Plaintiffs allege and incorporate by reference the allegations contained in paragraphs 1-42 above.

44. Defendants owe each of the individual Plaintiffs fiduciary duties and obligations of the highest responsibility and trust to administer that particular Plaintiff's trust funds with the full care and responsibility of a fiduciary and a trustee. These obligations should

be judged by the most exacting fiduciary standards. Cobell 240 F. 3d at 1099 (quoting Seminole Nation v. United States, 316 U.S. 286, 297 (1942)).

45. Defendants have failed to adhere to these responsibilities in that they have failed to provide the individual Plaintiffs with a full, accurate and timely accounting of that Plaintiff's trust funds, they have interfered with the Special Trustee in his efforts to comply with his legal obligations, and this failure and this interference both constitute a breach of the Defendants' fiduciary duties to each of the individual Plaintiffs, and are in violation of applicable law.

46. Each of the individual Plaintiffs is entitled to a declaratory judgment stating that the Defendants have not provided that Plaintiff with an accurate, complete and timely accounting of that Plaintiff's trust funds as required by law,

47. Each of the individual Plaintiffs is also entitled to a declaratory judgment stating that Defendants' failures to provide this accounting have deprived that Plaintiff of the ability to determine whether it has suffered a loss and if so to what extent.

48. Plaintiffs have no adequate administrative remedies, and only this Court can provide the Plaintiffs with the relief to which they are entitled.

### SECOND CLAIM FOR RELIEF

### DECLARATORY AND INJUNCTIVE RELIEF TO COMPEL A PROPER ACCOUNTING

49. The Plaintiffs allege and incorporate by reference the allegations contained in paragraphs 1-48 above.

50. Defendants' continuing failure to provide each of the Plaintiffs with timely, accurate and complete accountings of their tribal trust funds will cause each of the Plaintiffs irreparable injury, as records necessary for a proper accounting of these funds have been, and may continue to be lost or destroyed, depriving each of the Plaintiffs of

the information essential to determining whether that Plaintiffs' trust funds have been properly administered and whether that Plaintiff has suffered a loss.

51. Each of the Plaintiffs is entitled to declaratory and injunctive relief requiring the Defendants to provide them with a full, complete and up to date accounting of all of their trust funds, and preserving any claims which might be identified once that accounting is received.

### THIRD CLAIM FOR RELIEF

### DECLARATORY AND MANDATORY INJUNCTIVE RELIEF COMPELLING PROPER MANAGEMENT OF PLAINTIFFS PRESENT AND FUTURE ACCOUNTS

52. Each of the Plaintiffs is entitled to declaratory and mandatory injunctive relief compelling the Defendants to manage that Plaintiff's current and future trust funds and trust assets in full compliance with all applicable law and with their duties as that Plaintiff's guardian and trustee.

### FOURTH CLAIM FOR RELIEF

### PRESERVATION OF DAMAGE CLAIMS

53. The Plaintiffs allege and incorporate by reference the allegations contained in paragraphs 1-52 above.

54. Each of the Plaintiffs may have claims to damages that cannot be ascertained until after the Defendants make a reconciliation and accounting of that Tribe's trust property and accounts. Some of these claims, should they exist, will have to be filed in the United States Court of Federal Claims.

55. Each of the Plaintiffs is entitled to a judicial order preserving its claims for damages, so that these claims can be filed after it receives an accurate reconciliation and accounting of its trust funds from Defendants.

## F. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray:

1. Certification of the classes described herein.

2. For a declaration that the Defendants have not provided the Plaintiffs with a complete, accurate and up to date accounting of their trust funds as required by law.

3. For a declaration that by so doing, the Defendants have deprived each of the Plaintiffs of their ability to identify whether they have suffered a loss, as well as any specific claims that it might have against the Defendants for their mismanagement of those funds.

4. For a mandatory injunction requiring the Defendants to provide a full and complete accounting of each of the Plaintiffs' trust funds.

5. For a judicial order preserving any claims that each of the Plaintiffs might uncover once it receives that accounting.

6. For an order directing the Defendants to manage all of the individual Plaintiffs current and future trust funds, properties and resources in full compliance with all applicable law and with their duties as that Plaintiff's guardian and trustee.

7. For an award of cost of suit, without limitation, attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. Section 2412, and other applicable federal statues, and under general principals of law and equity, and the fees and costs for expert assistance

8. For such other relief as may be just and equitable.

DATED THIS 30th of December, 2005.

*Patricia Marks*
Patricia A. Marks
U.S. District Court Bar # 446702
15992 A.E. Mullinix Rd.
Woodbine, Maryland 21797
Tel: (410) 489-4553
Fax: (301) 854-5117
Email: Markspattyesq@aol.com